# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

BURL L. BARGERON,

    Petitioner,

vs.                                Case No.:    3:15-cv-1455-MMH-JBT
                                                                   3:09-cr-156-MMH-JBT

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

This case is before the Court on Petitioner Burl Bargeron's "Motion to Reconsider Order Denying 28 U.S.C. § 2255 Motion and Denying a Certificate of Appealability." (Civ. Doc. 26, Motion for Reconsideration).[1] Previously, the Court denied Bargeron's challenge to his Armed Career Criminal Act (ACCA) sentence based on 28 U.S.C. § 2255 and Johnson v. United States, 135 S. Ct. 2551 (2015).[2] In doing so, the Court reaffirmed the ruling it made at the sentencing hearing, which is that Bargeron has three prior convictions for a "serious drug offense," each committed on occasions different from one another. (Civ. Doc. 24, Order Denying Amended § 2255

---

[1] Citations to the record in the underlying criminal case, United States vs. Burl L. Bargeron, No. 3:09-cr-156-MMH-JBT, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:15-cv-1455-MMH-JBT, will be denoted as "Civ. Doc. __."

[2] Under the ACCA, a person convicted of being a felon in possession of a firearm is subject to an enhanced 15-year mandatory minimum sentence if he has three or more prior convictions for a "violent felony" or a "serious drug offense," or both, "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). In Johnson, the Supreme Court held that the ACCA's residual clause, part of the definition of a "violent felony" under § 924(e)(2)(B)(ii), is unconstitutionally vague.

1

Motion). Bargeron contends that the Court erred, and seeks relief under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. The United States responded in opposition (Civ. Doc. 28, Response), and Bargeron replied (Civ. Doc. 32, Reply). The United States also filed a notice of supplemental authority to alert the Court to United States v. Longoria, 874 F.3d 1278 (11th Cir. 2017) (Civ. Doc. 33, Notice of Supp. Auth.), to which Bargeron responded (Civ. Doc. 34, Response to Notice of Supp. Auth.). The Court also has considered the parties' supplemental briefs concerning the effect of Beeman v. United States, 871 F.3d 1215 (11th Cir. 2017), and Weeks v. United States, 930 F.3d 1263 (11th Cir. 2019). (Civ. Doc. 42, United States' Supp. Br. on Beeman; Civ. Doc. 43, Bargeron's Supp. Br. on Beeman; Civ. Doc. 54, United States' Supp. Br. on Weeks; Civ. Doc. 55, Bargeron's Supp. Br. on Weeks). On this record the Motion for Reconsideration is ripe for the Court's resolution.

The Court need not repeat the facts and history of the case, or the Court's reasons for rejecting Bargeron's challenge to the ACCA sentence. Those are set forth in the previous Order denying the Amended § 2255 Motion, which the Court incorporates by reference. For the reasons below, the Motion for Reconsideration is due to be denied.

**I.    Standard**

Pursuant to Rule 59, a party may move to alter or amend the judgment no later than 28 days after its entry. Fed. R. Civ. P. 59(e). Pursuant to Rule 60, a party may move for relief from judgment "within a reasonable time," and for certain grounds, "no more than a year after the entry of the judgment or order or date of the proceeding."

Fed. R. Civ. P. 60(c)(1). Bargeron timely moved for reconsideration exactly 28 days after the entry of judgment. As such, his request for relief is governed by Rule 59(e).[3]

Rule 59(e) affords the Court discretion to reconsider an order which it has entered. See Mincey v. Head, 206 F.3d 1106, 1137 (11th Cir. 2000); O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992). "The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (quotations and citations omitted). This Court has interpreted those parameters to include "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear

---

[3]   The Federal Rules of Civil Procedure do not specifically provide for the filing of a motion for reconsideration. Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991); Controlled Semiconductor, Inc. v. Control Systemation, Inc., No. 6:07-cv-1742-Orl-31KRS, 2008 WL 4459085, at *1 (M.D. Fla. Oct. 1, 2008). It is widely recognized, however, that Rule 59(e) (which governs motions "to alter or amend a judgment") encompasses motions for reconsideration. Controlled Semiconductor, Inc., 2008 WL 4459085, at *1 (citing 11 Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice & Procedure 2d § 2810.1 (2007)). (cont'd)
   In his Motion, Bargeron cites both Rule 59(e) and Rule 60(b) as the basis for the relief he seeks. Motion at 1. Upon review of the Motion, it appears that Bargeron seeks reconsideration of the merits of the dispute addressed in the Court's Order Denying Amended § 2255 Motion, consistent with the purposes of Rule 59(e). Shaarbay v. Florida, 269 F. App'x 866, 867 (11th Cir. 2008) (citing Wright v. Preferred Research, Inc., 891 F.2d 886, 889 (11th Cir. 1990)). Additionally, Bargeron filed the Motion within twenty-eight days after the entry of the Order Denying Amended § 2255 Motion, as required by Rule 59(e). See Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D. Fla. 1994); see also Rance v. D.R. Horton, Inc., 316 F. App'x 860, 863 (11th Cir. 2008) (explaining that a post-judgment motion to alter or amend the judgment served within the time for filing a Rule 59 motion other than a motion to correct purely clerical errors, "is within the scope of Rule 59(e) regardless of its label"); Mahone v. Ray, 326 F.3d 1176, 1177 n.1 (11th Cir. 2003). Accordingly, the Motion is properly construed as falling under Rule 59(e). Moreover, even if the Court were to consider the Motion under Rule 60(b), doing so would not produce a different result. "A 'significantly higher' standard is generally used to decide whether a movant is entitled to relief under Rule 60(b)." Holland v. Tucker, No. 06-CIV-20182, 2012 WL 2412115, at *2 n.1 (S.D. Fla. June 26, 2012) (quoting Vanderberg v. Donaldson, 259 F.3d 1321, 1326 (11th Cir. 2001)). Therefore, if Bargeron is not entitled to relief under Rule 59(e), he also is not entitled to relief under Rule 60(b), and the Court need not address his arguments under Rule 60(b) separately.

3

error or manifest injustice." Lamar Advertising of Mobile, Inc. v. City of Lakeland, Fla., 189 F.R.D. 480, 489 (M.D. Fla. 1999). For example, reconsideration may be appropriate where "the Court has patently misunderstood a party." O'Neill v. The Home Depot U.S.A., Inc., 243 F.R.D. 469, 483 (S.D. Fla. 2006).

The purpose of Rule 59 is not to ask the Court to reexamine an unfavorable ruling in the absence of a manifest error of law or fact. Jacobs v. Tempur-Pedic Int'l., Inc., 626 F.3d 1327, 1344 (11th Cir. 2010). As such, Rule 59(e) cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005). Additionally, motions to alter or amend "should not be used to raise arguments which could, and should, have been made before the judgment was issued." O'Neal, 958 F.2d at 1047 (quotations and citations omitted). Indeed, permitting a party to raise new arguments on a motion for reconsideration "essentially affords a litigant 'two bites of the apple.'" Am. Home Assurance Co. v. Glenn Estess & Assocs., Inc., 763 F.2d 1237, 1239 (11th Cir. 1985); see also Mincey, 206 F.3d at 1137 n.69 (citation omitted); Mays v. United States Postal Service, 122 F.3d 43, 46 (11th Cir. 1997) ("[A] motion to reconsider should not be used by the parties to set forth new theories of law"). Accordingly, the Eleventh Circuit Court of Appeals has held that the "[d]enial of a motion for reconsideration is especially sound when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage of the litigation." Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1292 (11th Cir. 2001) (internal quotations and citation omitted). Moreover, "[w]hen evaluating a motion for

4

reconsideration, a court should proceed cautiously, realizing that 'in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly.'" United States v. Bailey, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003) (citation omitted).

**II.    Discussion**

In the Motion for Reconsideration (Civ. Doc. 26), Bargeron rehashes many of the same arguments he raised in the "Memorandum in Support of 28 U.S.C. § 2255 Motion" (Civ. Doc. 19, Supporting Memorandum): i.e., that the Court cannot rely on Shepard[4] documents to make the ACCA's different-occasions determination, and even if it could, the available documents either were not Shepard-approved or did not support a finding that Bargeron's prior drug offenses were committed on different occasions. (Compare Supporting Memorandum at 4-8 with Motion for Reconsideration at 3-15). In denying Bargeron's Amended § 2255 motion, the Court considered and rejected each of these arguments. Order Denying Amended § 2255 Motion at 8 n.7, 13-18 & n. 11-14. Thus, the United States responded that Bargeron had not "identif[ied] new evidence or controlling case law that the Court overlooked in its earlier ruling," but rather "simply repeats prior arguments that previously failed to convince [the Court]." Response at 2. At the time the United States filed the Response, the Court would have agreed with that statement.

But circumstances changed. On September 22, 2017, the Eleventh Circuit Court of Appeals decided Beeman v. United States, 871 F.3d 1215, which clarified the

---

[4]    Shepard v. United States, 544 U.S. 13 (2005).

5

framework for analyzing challenges under § 2255 to the ACCA enhancement in the wake of Johnson, 135 S. Ct. 2551. Then, a little over a month after that, the Eleventh Circuit decided United States v. Longoria, 874 F.3d 1278. In Longoria, the Eleventh Circuit reaffirmed its prior holdings that a district court may (indeed, must) rely on Shepard documents to make the ACCA's different-occasions determination. Id. at 1282-83. After receiving briefing on Longoria (Civ. Docs. 33, 34), the Court directed the parties to file supplemental briefs addressing the impact of Beeman. (Civ. Doc. 35). The parties submitted their briefs concerning Beeman on March 25, 2019 (Civ. Docs. 42, 43), but only a few months later, the Eleventh Circuit decided Weeks v. United States, 930 F.3d 1263. In Weeks, the Eleventh Circuit addressed how to apply Beeman where a § 2255 petitioner, like Bargeron, challenged his ACCA sentence on direct appeal. Id. at 1275. Weeks prompted a new round of supplemental briefing, which the parties completed in January 2020. (See Civ. Docs. 54, 55).

Needless to say, the legal landscape has changed since the Court denied Bargeron's Amended § 2255 Motion. However, it has not changed in a way that is overall favorable to Bargeron. The Court begins with Beeman, a decision that clarified two things about § 2255 claims based on Johnson. First, Beeman clarified how to distinguish claims based on Johnson from claims based on Descamps v. United States, 133 S. Ct. 2276 (2013), and how the statute of limitations applies to each type of claim. Beeman, 871 F.3d at 1219-21. Second, Beeman clarified the standard for evaluating the merits of a Johnson claim. Id. at 1221-25. It is the second point that is important

6

here.[5] The Beeman court held that for a prisoner to successfully challenge his ACCA sentence based on Johnson, he must prove "more likely than not" that the sentencing court relied on the residual clause to impose the ACCA enhancement. Id. at 1220-22.

> Only if the movant would not have been sentenced as an armed career criminal absent the existence of the residual clause is there a Johnson violation. That will be the case only (1) if the sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause (neither of which were called into question by Johnson) to qualify a prior conviction as a violent felony, and (2) if there were not at least three other prior convictions that could have qualified under either of those two clauses as a violent felony, or as a serious drug offense.

Id. at 1221. The court explained that "[i]f it is just as likely that the sentencing court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, then the movant has failed to show that his enhancement was due to use of the residual clause." Id. at 1222. The Beeman court further explained that whether the sentencing court relied on the residual clause is a "historical fact," which is determined by reference to the state of affairs that existed at the time of sentencing. See id. at 1224 n.5. Thus, decisions rendered afterward holding that a particular offense no longer qualifies under one of the other ACCA clauses "cast[ ] very little light, if any, on th[is] key question of historical fact." Id.

---

[5]  For the sake of discussion, the Court accepts Bargeron's contention that the statute of limitations does not preclude Bargeron from raising the different-occasions issue because of the unique procedural history of this case, which has resulted in the § 2255 proceedings being Bargeron's first opportunity for review of the different-occasions ruling. Bargeron's Supp. Br. on Weeks at 5-7; Millender v. United States, 774 F. App'x 613, 614 (11th Cir. 2019). But that only means that the Court does not consider Bargeron's different-occasions challenge to be time-barred. It does not change this Court's conclusion that Bargeron's ACCA enhancement was, and is, supported by three prior convictions for a serious drug offense, each committed on different occasions.

According to Beeman, a prisoner can establish that the sentencing court relied on the residual clause in two ways. First, the prisoner can point to "direct evidence: comments or findings by the sentencing judge indicating that the residual clause was relied on and was essential to application of the ACCA in that case." Id. at 1224 n.4. Alternatively, absent direct evidence, there will

> sometimes be sufficient circumstantial evidence to show the specific basis of the enhancement. For example, there could be statements in the PSR [Presentence Investigation Report], which were not objected to, recommending that the enumerated clause and the elements clause did not apply to the prior conviction in question and did not apply to other prior convictions that could have served to justify application of the ACCA. Or the sentencing record may contain concessions by the prosecutor that those two other clauses do not apply to the conviction in question or others.

Id. A prisoner also may prove circumstantially that the ACCA sentence depended on the residual clause "if the law was clear at the time of sentencing that only the residual clause would authorize a finding that the prior conviction was a violent felony." Id. at 1224 n.5 (emphasis added). However, if "'the evidence does not clearly explain what happened … the party with the burden loses.'" Id. at 1225 (citation omitted).

The Eleventh Circuit later clarified the scope of the historical record for purposes of applying Beeman. In Weeks, the court held that

> in a § 2255 motion asserting a Samuel Johnson claim where the claimant challenged his ACCA sentencing enhancement on direct appeal, … it is appropriate to consider the record of what transpired at sentencing and through the pendency of the direct appeal, as well as the legal landscape through that time.

Weeks, 930 F.3d at 1280. "[I]t is necessary in such a case to look to the record and binding precedent through the time of direct appeal to determine whether the

8

claimant has shown 'that—more likely than not—it was use of the residual clause that led to the ... enhancement of his sentence.'" Id. at 1275 (quoting Beeman, 871 F.3d at 1222).

Equally significant is the Eleventh Circuit's intervening decision in Longoria, 874 F.3d 1278. There, the Eleventh Circuit considered whether a defendant qualified as an armed career criminal where he had one prior conviction for conspiracy to distribute cocaine and two prior convictions for discrete acts of distributing cocaine, both of which occurred during the course of the conspiracy. Id. at 1279, 1280. Just as Bargeron did at sentencing, Longoria argued that because the two acts of distribution occurred within the scope of the conspiracy, the conspiracy offense was not committed on an occasion different from the distribution offenses. See id. at 1280. And just as Bargeron argued in these proceedings, Longoria argued that "the District Court improperly considered 'non-elemental facts,' the dates of his prior convictions, in determining that they qualified as serious drug offenses that occurred on different occasions under the ACCA." Id. However, the Eleventh Circuit rejected both of these arguments. First, the court held that depending on the facts, "a drug conspiracy and a substantive drug offense occurring within its span may have been 'committed on occasions different from one another' under the ACCA." Id. at 1282. The court cited its prior holdings in United States v. Rice, 43 F.3d 601 (11th Cir. 1995), and United States v. Hansley, 54 F.3d 709 (11th Cir. 1995), where it ruled that a substantive drug offense and an overlapping conspiracy were sufficiently distinct to count as separate offenses for purposes of the recidivist enhancement under 21 U.S.C. § 841(b)(1)(A). Longoria,

9

874 F.3d at 1281-82 (citing also United States v. Melbie, 751 F.3d 586, 587 (8th Cir. 2014)). Second, the court reaffirmed its prior holdings that "'for ACCA purposes, district courts may determine both the existence of prior convictions and the factual nature of those convictions, including whether they were committed on different occasions, so long as they limit themselves to Shepard-approved documents.'" Id. at 1283 (emphasis in original) (quoting United States v. Timothy Weeks, 711 F.3d 1255, 1259 (11th Cir. 2013), abrogated on other grounds by Descamps, 133 S. Ct. 2276). Thus, the court held that it was appropriate for the district court to consult Shepard documents to determine whether the defendant's conspiracy offense and substantive drug offenses were committed on different occasions. Id.

The upshot of these intervening decisions is that Bargeron is not entitled to relief. Longoria directly confirms the ruling that this Court has now made twice: that two discrete drug distribution offenses may be considered separate from an overlapping conspiracy offense, depending on a review of Shepard-approved sources. (Civ. Doc. 7-3, Sentencing Transcript Volume III at 3-10); Order Denying Amended § 2255 Motion at 11-14 & n.9, n.11. And as the Court has already explained, the Shepard documents revealed that the conspiracy offense for which Bargeron was convicted was geographically, temporally, and substantively distinct from the two drug trafficking offenses for which he was also convicted. Order Denying Amended § 2255 Motion at 14-18 & n.12-14. Bargeron's primary argument in the Motion for Reconsideration was that the Court erred in making the different-occasions determination using Shepard documents, Motion for Reconsideration at 3-13, but Longoria forecloses that

10

argument.[6]

Bargeron also argues that the Court erred by relying on the 2003 Presentence Investigation Report ("PSR") in making the different-occasions determination because it is not a Shepard document. Motion for Reconsideration at 9-12. Relying on United States v. Braun, 801 F.3d 1301 (11th Cir. 2015), Bargeron contends that a PSR from a prior, unrelated criminal offense is not a Shepard-approved source. However, the Court reminds Bargeron that he ignores a distinction between this case and Braun. In Braun, the defendant did not assent to the factual correctness of the prior PSR because he contested its accuracy at his later sentencing hearing. Id. at 1302, 1306. Here by contrast, Bargeron did not dispute the accuracy of the 2003 PSR during the instant sentencing proceedings. Instead, his own counsel went further, describing it as "the best evidence in terms of the assessment of the events" surrounding the prior conspiracy offense, and stated that "the Court can rely clearly on what was in the prior presentence investigation report." (Civ. Doc. 7-2, Sentencing Transcript Volume II at 24). As the Eleventh Circuit has repeatedly held, a court may rely on undisputed facts

---

[6] Alternatively, Bargeron argues that, under the oldest precedent rule, the Court should disregard Longoria because it conflicts with the Eleventh Circuit's earlier decision in United States v. Sneed, 600 F.3d 1326 (11th Cir. 2010). Response to Notice of Supp. Auth. at 2-4. The Court perceives no conflict with Sneed because in Sneed itself, the Eleventh Circuit instructed sentencing judges to consult Shepard documents in making the different-occasions determination. 600 F.3d at 1332-33. Nor does Longoria obviously conflict with the United States Supreme Court's holdings in Descamps, 133 S. Ct. 2276, and Mathis v. United States, 136 S. Ct. 2243 (2016), neither of which addressed the ACCA's different-occasions inquiry. Moreover, even if Longoria is arguably inconsistent with Descamps or Mathis, that does not give the Court license to ignore the Eleventh Circuit's decisions. United States v. Fritts, 841 F.3d 937, 942 (11th Cir. 2016) ("Under this Court's prior panel precedent rule, there is never an exception carved out for overlooked or misinterpreted Supreme Court precedent."); Smith v. GTE Corp., 236 F.3d 1292, 1303 (11th Cir. 2001) ("[W]e categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time.").

in a PSR for purposes of sentencing. United States v. McCloud, 818 F.3d 591, 596 (11th Cir. 2016) ("The Shepard documents in this case include … undisputed statements in the PSI."); United States v. Beckles, 565 F.3d 832, 843 (11th Cir. 2009) ("For purposes of sentencing, the district court also may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented.") (citation omitted). Thus, Bargeron has failed to show that the Court erred – let alone manifestly erred – in relying on the 2003 PSR to determine that each of his prior drug offenses were committed on occasions different from one another.

Besides, putting aside the 2003 PSR, the Court also relied on the indictment and the plea agreement from the 2003 conspiracy offense to make the different-occasions determination. See Sent. Tr. Vol. III at 5, 7. A plea agreement and a charging instrument are indisputably Shepard-approved documents. Shepard, 544 U.S. at 16, 26. Here, the indictment and the plea agreement from the 2003 conspiracy offense reflected that Bargeron joined the conspiracy in November 2001, well before he committed the other two substantive drug offenses upon which the ACCA sentence was based (the latter two offenses occurring on May 16, 2002, and May 30, 2002). See Sent. Tr. Vol. III at 5, 7. The prior plea agreement also reflected that some of the conduct underlying the conspiracy took place in Suwannee County, Florida, making the conspiracy geographically distinct from the substantive drug offenses as well. See id. at 7. As such, Bargeron's contention that the Shepard documents did not support the different-occasions finding lacks merit.

Beeman and Weeks offer Bargeron no refuge. Bargeron seizes on Weeks to

argue that the record on direct appeal reflects that his ACCA sentence depended on the residual clause, but the Court disagrees. As noted earlier, the Court explicitly ruled at the sentencing hearing that Bargeron was an armed career criminal because he had three prior convictions for a serious drug offense, each committed on different occasions. Sent. Tr. Vol. III at 3-10. Although Bargeron also had a prior conviction for burglary under Florida law, PSR at ¶ 37, the Court made no reference to that conviction or to the residual clause in imposing the ACCA enhancement. In his direct appeal, Bargeron "argue[d] that the district court erred in applying the ACCA 15–year minimum sentence because his conspiracy offense did not occur on a different occasion than his two trafficking offenses." United States v. Bargeron, 435 F. App'x 892, 893 (11th Cir. 2011). The Eleventh Circuit did not resolve Bargeron's argument one way or the other. Instead, it sidestepped the issue by pointing to Bargeron's burglary conviction. The court reasoned:

> In this case, even if the district court erred by concluding that Bargeron's conspiracy conviction qualified as a third predicate ACCA conviction, any such error was harmless. Bargeron stipulated to a 1999 Florida conviction for burglary of a structure. Burglary of a structure, at the time of Bargeron's offense, constituted a generic burglary to the extent the crime involved a building because it criminalized the unlawful entering or remaining in a building with the intent to commit an offense therein. Compare Fla. Stat. 810.02(1)(a) (1998) with Taylor, 495 U.S. at 599, 110 S. Ct. 2143.[7] To the extent the offense involved the curtilage of a building, it involved conduct that presented a serious potential risk of physical injury to another. See Matthews, 466 F.3d at 1275–76.[8] And at minimum, a Florida burglary offense was punishable by up to 5 years imprisonment. See Fla. Stat. § 810.02(4) (1998); Fla. Stat. § 775.082(3)(d) (1998). Consequently, regardless of whether the offense involved a building or its curtilage, burglary of a structure qualified as a "violent felony."

---

[7] Taylor v. United States, 495 U.S. 575 (1990).
[8] United States v. Matthews, 466 F.3d 1271 (11th Cir. 2006).

> Moreover, Bargeron's burglary offense occurred on a different occasion than his two trafficking offenses....

Bargeron, 435 F. App'x at 894.

Bargeron argues that in light of Weeks, the above decision means that his ACCA sentence came to rest on the residual clause. The Court disagrees for two reasons. First, the decision on direct appeal does not alter the bases articulated by this Court for imposing the ACCA enhancement. Although the Eleventh Circuit affirmed the result by considering Bargeron's burglary conviction, it neither affirmed nor overruled this Court's decision that Bargeron was an armed career criminal based on having three separate convictions for a serious drug offense. Because the Eleventh Circuit avoided the different-occasions issue altogether, it left this Court's different-occasions ruling undisturbed. As such, Bargeron has not shown, even taking into account the record on direct appeal, that "there were not at least three other prior convictions that could have qualified … as a serious drug offense." Beeman, 871 F.3d at 1221. This conclusion is bolstered by the fact that in Longoria, the Eleventh Circuit resolved the different-occasions issue it left unanswered in Bargeron's appeal, holding that a conspiracy offense may be considered a distinct ACCA predicate from any overlapping substantive drug offenses. 874 F.3d at 1281-82 & n.12 (citing, inter alia, Bargeron, 435 F. App'x 892). Second, even to the extent the Eleventh Circuit considered Bargeron's burglary conviction, the court did not "rel[y] solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause … to qualify [the] prior [burglary] conviction as a violent felony." Beeman, 871 F.3d at 1221. As the Eleventh Circuit's opinion stated,

14

Bargeron's burglary conviction "constituted a generic burglary to the extent the crime involved a building" and "[t]o the extent the offense involved the curtilage of a building, it involved conduct that presented a serious potential risk of physical injury to another." Bargeron, 435 F. App'x at 894. Thus, the court did not clarify whether it relied on the enumerated offense clause or the residual clause. It is true, as Bargeron observes, that "the Eleventh Circuit made no finding that Mr. Bargeron's burglary conviction rested on burglary of a building." Bargeron's Supp. Br. on Weeks at 4. But the Eleventh Circuit also made no finding that Bargeron's burglary conviction rested on burglary of the curtilage either. And where the record is unclear, as it is here, that ambiguity is resolved against the § 2255 movant because the movant has the burden of proof, not the government. Beeman, 871 F.3d at 1221, 1225. Because "it is just as likely that the [appellate] court relied on the elements or enumerated offenses clause, solely or as an alternative basis for the enhancement, [Bargeron] has failed to show that his enhancement was due to use of the residual clause." Id. at 1222.

Finally, Bargeron urges the Court not to follow Beeman because Beeman was wrongly decided and conflicts with the Eleventh Circuit's earlier decision in Mays v. United States, 817 F.3d 728 (11th Cir. 2016). Bargeron's Supp. Br. on Beeman at 1-7. However, the Eleventh Circuit has rejected that argument, observing that "[n]othing in Mays considered or reached any conclusion that, in deciding the merits of a stand-alone Johnson claim, the habeas court must also reach out to make sure that the sentencing court complied with Descamps." Beeman v. United States, 899 F.3d 1218, 1223 n.3 (11th Cir. 2018) (denying rehearing en banc). Bargeron encourages the Court

15

to follow the approach set out by the Fourth and Ninth Circuit Courts of Appeals, which is to (1) determine whether the record shows that the sentencing court <u>may</u> have relied on the residual clause, and if so, (2) turn to current law to determine if the ACCA sentence can be sustained. <u>United States v. Winston</u>, 850 F.3d 677, 682-86 (4th Cir. 2017); <u>United States v. Geozos</u>, 870 F.3d 890, 896-97 & n.6 (9th Cir. 2017) (same), abrogation on other grounds recognized by <u>Ward v. United States</u>, 936 F.3d 914, 919 (9th Cir. 2019). But this Court is "bound by the panel's holding in <u>Beeman</u>," regardless of whether <u>Beeman</u> arguably conflicts with other decisions. <u>Perez v. United States</u>, 730 F. App'x 804, 810-11 (11th Cir. 2018); <u>see also</u> <u>Fritts</u>, 841 F.3d at 942 (there is no exception to the prior panel precedent rule "for overlooked or misinterpreted Supreme Court precedent."). Besides, accepting Bargeron's invitation to apply the approach of the Fourth and Ninth Circuits would not help him. As the Court has explained, Bargeron remains an armed career criminal under current precedent based on <u>Longoria</u> and his three convictions for a serious drug offense.

### III.    Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Bargeron seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted, either with respect to this Order or the prior Order denying the Amended § 2255 Motion. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Bargeron "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v.

16

Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. Bargeron argues that, at a minimum, reasonable jurists could debate whether his claims have merit because other circuits have adopted a different approach to Johnson claims than Beeman. Bargeron's Supp. Br. on Beeman at 7-8. However, a circuit conflict does not warrant a COA, "[a]nd no COA should issue where the claim is foreclosed by binding circuit precedent 'because reasonable jurists will follow controlling law.'" Hamilton v. Sec'y, Fla. Dep't of Corr., 793 F.3d 1261, 1266 (11th Cir. 2015) (quoting Gordon v. Sec'y, Fla. Dep't of Corr., 479 F.3d 1299, 1300 (11th Cir. 2007)). Therefore, upon consideration of the record as a whole, this Court will deny a COA.

Accordingly, it is hereby **ORDERED:**

1. Petitioner Burl Bargeron's "Motion to Reconsider Order Denying 28 U.S.C. § 2255 Motion and Denying a Certificate of Appealability" (Civ. Doc. 26) is **DENIED**.

2. If Bargeron appeals the denial of this Motion, the Court denies a certificate of appealability. Because this Court has determined that a certificate of

appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of April, 2021.

MARCIA MORALES HOWARD
United States District Judge

Lc 19
Copies:
Counsel of record
Burl Bargeron